William H. THOMAS *v.* STATE of Arkansas

CR 76-111                                                542 S.W. 2d 284

Opinion delivered October 25, 1976
(In Banc)

*Richard L. Mays,* of *Walker, Kaplan & Mays, P.A.,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Jackson Jones,* Asst. Atty. Gen., for appellee.

CONLEY BYRD, Justice. Involved in this case is the bail bond procedure conducted in the Little Rock Municipal

Court. The record shows that petitioner William H. Thomas was arrested on Saturday May 8, 1976, at approximately 11:45 p.m. for allegedly possessing marijuana for sale. Bail at that time by prearrangement of the municipal court for all such offenses was set at $20,000. On Monday May 10, 1976, at petitioner's first appearance before the municipal court, and when it was determined that he was a resident of the State, the bail was reduced to $5,000 to be made only by a professional bail bondsman. It appears that no hearing was had at that time and on motion of the State the matter of petitioner's detention was passed to May 26, 1976. On May 11, 1976, petitioner through his present counsel filed a motion to reduce the $5,000 bail bond. In refusing to hold a pretrial release inquiry pursuant to Ark. Rules of Crim. Pro., Rule 8.5 the municipal judge stated:

> "It's going to be my position today and tomorrow that everybody that's charged with the possession of marijuana with intent to sell or some other hard drugs, it will be Twenty Thousand Dollars to start and reduced then after the Court hears more about the facts to a minimum of Five Thousand unless the Prosecuting Attorney comes in with additional information and recommends a lower bond. That has been my policy. It's going to be my policy and there's no use anybody taking this Court's time trying to change my mind. . . ."

Following a hearing in municipal court, petitioner went to the circuit court upon a "Petition for Supervisory Writ of Mandamus and Certiorari and for Writ of Habeas Corpus." The circuit court held two hearings — one on May 14, 1976, and the other on May 17, 1976. The first hearing was conducted pursuant to Ark. Rules of Crim. Pro., Rule 8.3(c), wherein it was determined that petitioner, while driving an automobile occupied by two or three other men, had been stopped by the police and that a search of the car by the police turned up two pounds of marijuana. The court at that time fixed bail at $5,000 to "be bail by a surety, money bail by a surety or property bond" pending the May 17th hearing. In dismissing the mandamus petition, on May 17th, the circuit court stated:

"THE COURT:

Well, I would want the precedent to set out what I have set out here, and that is that Rule 8.3 is mandatory, that a probable cause hearing must be held, that a pretrial release inquiry must be held.

MR. MAYS:
But that one has been held, in this case?

THE COURT:
One has been held in this case and, if there was any deficiency, it was cured by the one that I held. And I assume that this will take care of any problems we have under this bond and, also, you can put in there that I think that twenty thousand dollars, that I hold that a twenty thousand dollar first—

MR. MAYS:
(Interposing) Pre-set.

THE COURT:
Pre-set bond before the judge has an opportunity to hear and have this pretrail release hearing, which he always has the very next morning, is reasonable. I don't see anything else we need to cover in there. Court's adjourned.

MR. MAYS:
Thank you, your Honor.

(THEREUPON, the hearing was concluded.)"

Following the ruling of the trial court, a temporary writ of certiorari was granted by this court releasing petitioner upon "$5,000 bail with surety or by depositing 10% of that bail with the clerk of the Municipal Court."

Petitioner's contentions in this court are as follows:

"1. The Circuit Court erred in refusing to direct the Municipal Court to conduct a pretrial release inquiry before setting money bail;

2. The Circuit Court erred in refusing to require the

Municipal Court to determine that no other condition would ensure the appearance of the appellant in court before setting money bail; and

3. The Circuit Court erred in refusing to require the Municipal Court to select the least restrictive type of money bail arrangement."

The Constitution of the State of Arkansas in so far as here pertinent provides:

Art. 2 § 8 ". . . All persons shall, before conviction, be bailable by sufficient sureties, except for capital offenses, when the proof is evident or the presumption great."

Art. 2 § 9. "Excessive bail shall not be required. . . . "

The Arkansas Rules of Criminal Procedure, promulgated by this Court on January 6, 1976, in so far as here applicable provide:

## RULE 8. RELEASE BY JUDICIAL OFFICER AT FIRST APPEARANCE

"RULE 8.1 *Prompt First Appearance*
An arrested person who is not released by citation or by other lawful manner shall be taken before a judicial officer without unnecessary delay.

. . .

RULE 8.3 *Nature of First Appearance*
(a) Upon the first appearance of the defendant the judicial officer shall inform him of the charge. The judicial officer shall also inform the defendant that:
(i) he is not required to say anything, and that anything he says can be used against him;
(ii) he has a right to counsel; and
(iii) he has a right to communicate with his counsel, his family, or his friends, and that reasonable means will be provided for him to do so.
(b) No further steps in the proceedings other than pretrial release inquiry may be taken until the defendant

and his counsel have had an adequate opportunity to confer, unless the defendant has intelligently waived his right to counsel or has refused the assistance of counsel.

(c) The judicial officer, if unable to dispose of the case at the first appearance, shall proceed to decide the question of the pretrial release of the defendant. In so doing, the judicial officer shall first determine by an informal, non-adversary hearing whether there is probable cause for detaining the arrested person pending further proceedings. The standard for determining probable cause at such hearing shall be the same as that which governs arrests with or without a warrant.

RULE 8.4 *Pretrial Release Inquiry: In What Circumstances Conducted.*

(a) An inquiry by the judicial officer into the relevant facts which might affect the pretrial release decision shall be made:

(i) in all cases where the maximum penalty for the offense charged exceeds one (1) year and the prosecuting attorney does not stipulate that the defendant may be released on his own recognizance;

(ii) in those cases where the maximum penalty for the offense charged is less than one (1) year and in which a law enforcement officer gives notice to the judicial officer that he intends to oppose release of the defendant on his own recognizance.

(b) In all other cases, the judicial officer may release the defendant on his own recognizance or on order to appear without conducting a pretrial release inquiry.

RULE 8.5 *Pretrial Release Inquiry: When Conducted: Nature of.*

(a) A pretrial release inquiry shall be conducted by the judicial officer prior to or at the first appearance of the defendant.

(b) The inquiry should take the form of an assessment of factors relevant to the pretrial release decision, such as:

(i) the defendant's employment status, history and financial condition;

(ii) the nature and extent of his family relationships;

(iii) his past and present residence;

(iv) his character and reputation;

(v) persons who agree to assist him in attending court at the proper times;

(vi) the nature of the current charge and any mitigating or aggravating factors that may bear on the likelihood of conviction and the possible penalty;

(vii) the defendant's prior criminal record, if any, and, if he previously has been released pending trial, whether he appeared as required;

(viii) any facts indicating the possibility of violations of law if the defendant is released without restrictions; and

(ix) any other facts tending to indicate that the defendant has strong ties to the community and is not likely to flee the jurisdiction.

(c) The prosecuting attorney should make recommendations to the judicial officer concerning:

(i) the advisability and appropriateness of pretrial release;

(ii) the amount and type of bail bond;

(iii) the conditions, if any, which should be imposed on the defendant's release.

## RULE 9. THE RELEASE DECISION

RULE 9.1 *Release on Order to Appear or on Defendant's Own Recognizance.*

(a) At the first appearance the judicial officer may release the defendant on his personal recognizance or upon an order to appear.

(b) Where conditions of release are found necessary, the judicial officer should impose one (1) or more of the following conditions:

(i) place the defendant under the care of a qualified person or organization agreeing to supervise the defendant and assist him in appearing in court;

(ii) place the defendant under the supervision of a probation officer or other appropriate public official;

(iii) impose reasonable restrictions on the ac-

tivities, movements, associations and residences of the defendant;

 (iv) release the defendant during working hours but require him to return to custody at specified times; or

 (v) impose any other reasonable restriction to insure the appearance of the defendant.

## RULE 9.2 *Release on Money Bail.*

 (a) The judicial officer shall set money bail only after he determines that no other conditions will reasonably ensure the appearance of the defendant in court.

 (b) If it is determined that money bail should be set, the judicial officer shall require one (1) of the following:

 (i) the execution of an unsecured bond in an amount specified by the judicial officer, either signed by other persons or not;

 (ii) the execution of an unsecured bond in an amount specified by the judicial officer, accompanied by a deposit of cash or securities equal to ten per cent (10%) of the face amount of the bond. Ninety per cent (90%) of the deposit shall be returned at the conclusion of the proceedings, provided the defendant has not defaulted in the performance of the conditions of the bond; or

 (iii) the execution of a bond secured by the deposit of the full amount in cash, or by other property, or by obligation of qualified sureties.

 (c) In setting the amount of bail the judicial officer should take into account all facts relevant to the risk of wilful nonappearance including:

 (i) the length and character of the defendant's residence in the community;

 (ii) his employment status, history and financial condition;

 (iii) his family ties and relationship;

 (iv) his reputation, character and mental condition;

 (v) his past history of response to legal process;

 (vi) his prior criminal record;

 (vii) the identity of responsible members of the

community who vouch for the defendant's reliability;
(viii) the nature of the current charge, the apparent probability of conviction and the likely sentence, in so far as these factors are relevant to the risk of nonappearance; and
(ix) any other factors indicating the defendant's roots in the community."

The drafting committee's comment to Rule 9.2 states: "Money bail in any form ought to be a last resort and should be used only to assure the defendant's appearance."

In *Stack* v. *Boyle*, 342 U.S. 1, 72 S. Ct. 1, 96 L. Ed. 3 (1951), the twelve petitioners had been indicted in the District Court upon a charge of conspiring to violate the Smith Act. The trial court set bail at $50,000 for each petitioner. The only evidence offered by the Government on a motion for reduction of bond was a certified record showing that four persons previously convicted under the Smith Act had forfeited bail. In holding that the District Court in leaving the bail at $50,000 had violated both statutory and constitutional standards for admission to bail, a majority of the court, in speaking through Chief Justice Vinson, stated:

"*First.* From the passage of the Judiciary Act of 1789, 1 Stat. 73, 91, to the present Federal Rules of Criminal Procedure, Rule 46(a)(1), federal law has unequivocally provided that a person arrested for a noncapital offense *shall* be admitted to bail. This traditional right to freedom before conviction permits. the unhampered preparation of a defense, and serves to prevent the infliction of punishment prior to conviction. See *Hudson* v. *Parker,* 156 U.S. 277, 285 (1895). Unless this right to bail before trial is preserved, the presumption of innocence, secured only after centuries of struggle, would lose its meaning.
The right to release before trial is conditioned upon the accused's giving adequate assurance that he will stand trial and submit to sentence if found guilty. *Ex parte Milburn,* 9 Pet. 704, 710 (1835). Like the ancient practice of securing the oaths of responsible persons to stand as sureties for the accused, the modern practice of requiring a bail bond or the deposit of a sum of money

subject to forfeiture serves as additional assurance of the presence of an accused. Bail set at a figure higher than an amount reasonably calculated to fulfill this purpose is 'excessive' under the Eighth Amendment. See *United States v. Motlow,* 10 F. 2d 657 (1926, opinion by Mr. Justice Butler as Circuit Justice of the Seventh Circuit).

Since the function of bail is limited, the fixing of bail for any individual defendant must be based upon standards relevant to the purpose of assuring the presence of that defendant. The traditional standards as expressed in the Federal Rules of Criminal Procedure are to be applied in each case to each defendant. In this case petitioners are charged with offenses under the Smith Act and, if found guilty, their convictions are subject to review with the scrupulous care demanded by our Constitution. *Dennis v. United States,* 341 U.S. 494, 516 (1951). Upon final judgment of conviction, petitioners face imprisonment of not more than five years and a fine of not more than $10,000. It is not denied that bail for each petitioner has been fixed in a sum much higher than that usually imposed for offenses with like penalties and yet there has been no factual showing to justify such action in this case. The Government asks the courts to depart from the norm by assuming, without the introduction of evidence, that each petitioner is a pawn in a conspiracy and will, in obedience to a superior, flee the jurisdiction. To infer from the fact of indictment alone a need for bail in an unusually high amount is an arbitrary act. Such conduct would inject into our own system of government the very principles of totalitarianism which Congress was seeking to guard against in passing the statute under which petitioners have been indicted."

In a separate opinion Justice Jackson elaborated:

"It is complained that the District Court fixed a uniform blanket bail chiefly by consideration of the nature of the accusation and did not take into account the difference in circumstances between different defendants. If this occurred, it is a clear violation of Rule 46(c). Each defendant stands before the bar of justice as an individual. Even on a conspiracy charge defendants

do not lose their separateness or identity. While it might be possible that these defendants are identical in financial ability, character and relation to the charge — elements Congress has directed to be regarded in fixing bail — I think it violates the law of probabilities. Each accused is entitled to any benefits due to his good record, and misdeeds or a bad record should prejudice only those who are guilty of them. The question when application for bail is made relates to each one's trustworthiness to appear for trial and what security will supply reasonable assurance of his appearance."

. . .

"But the protest charges, and the defect in the proceedings below appears to be, that, provoked by the flight of certain Communists after conviction, the Government demands and public opinion supports a use of the bail power to keep Communist defendants in jail before conviction. Thus, the amount is said to have been fixed not as a reasonable assurance of their presence at the trial, but also as an assurance they would remain in jail. There seems reason to believe that this may have been the spirit to which the courts below have yielded, and it is contrary to the whole policy and philosophy of bail. This is not to say that every defendant is entitled to such bail as he can provide, but he is entitled to an opportunity to make it in a reasonable amount. I think the whole matter should be reconsidered by the appropriate judges in the traditional spirit of bail procedure."

Obviously Rule 8.5, *supra,* mandates that the judicial officer hold a pretrial release inquiry upon the first appearance of an arrested person. Likewise, Rule 9.2 mandates a determination that no other condition would ensure the appearance of the arrested person before setting a money bail.

When we consider the record before us with reference to the applicable law and the purpose of pretrial bail, we must agree with petitioner that the circuit court erred in refusing to direct the municipal court to conduct a pretrial release in-

quiry before setting money bail. The municipal court's adamantive bail requirements in drug arrests of $20,000 money bail at time of arrest with a reduction to $5,000 money bail for state residents can hardly be classified as a pretrial release inquiry. It would be putting form above substance to classify an inquiry limited to an arbitrary determination of whether the bail would be $20,000 or $5,000 money bail as a pretrial release inquiry within the meaning of Rule 8.5, *supra.* Consequently, we need not determine the nature and extent of a hearing necessary to satisfy the requirements of a pretrial release inquiry. In this connection we must note that The Honorable Municipal Judge was fearful that such inquiries would seriously impede the business of the municipal court. However, we must point out that the Constitution of this State and the foregoing Rules place much stress on the individual rights of persons and were drafted with the view that the authorities would discharge their responsibilities by providing sufficient courts and courtroom facilities for the protection of those individual rights.

Since the Ark. Rules of Criminal Procedure were drawn from the standpoint that money bail in any form should be used only as a last resort to ensure the appearance of an accused in court, we must agree with petitioner that the circuit court erred in refusing to require the municipal court to make determination that no other condition would ensure petitioner's appearance in court before setting money bail only.

Finally, we must agree with petitioner that Rule 9.2 contemplates that in fixing money bail, the judicial officer will use the least restrictive type of money bail arrangement set out in Rule 9.2(b) for securing the appearance of an arrested person.

The State to sustain the action of the circuit court contends that if there were any deficiencies in the municipal court then they were cured by the proceedings in the circuit court. This contention is not sustained by the record which shows bail fixed by the circuit court solely upon the offense charged and without regard to the individual responsibility of appellant. The tenor of the record before us is that a person arrested on a drug charge must either remain in jail or forfeit

a considerable sum[1] to a professional bail bondsman. Thus in either case the arrested person is substantially penalized before trial. The spirit of the fixing of bail by the trial court contravened the drafting committee's view that "money bail in any form ought to be a last resort and should be used only to assure the defendant's appearance."

The State also suggests that certiorari is not the proper remedy to review the proceedings in the circuit court. However, we pointed out in *State v. Nelson, Berry Petroleum Co.,* 246 Ark. 210, 438 S.W. 2d 33 (1969), that certiorari is available in the exercise of this court's superintending control over a tribunal which is proceeding illegally and where there is no other adequate mode of review.

Writ granted.

HOLT, J., not participating.

FOGLEMAN, J., concurs.

JOHN A. FOGLEMAN, Justice, concurring. In concurring, I disagree with only one particular of the majority opinion. I cannot agree that the circuit court did not conduct an adequate pretrial release inquiry. The circuit judge specifically found, and held, that only money bail would insure appellant's appearance, set the bail at $5,000 and declined to allow the payment of ten percent of the face amount of the bail into court, prescribing that bail be in the form of either a surety or property bond. The trial judge specifically stated that he did not feel that this was the proper case for a cash deposit of ten percent of the bail. It appears that the circuit judge did take into consideration relevant factors and made certain findings in that regard. He also found, as a basis for requiring money bail, that there was a probability of conviction and a substantial sentence of imprisonment, remarking that juries deal harshly with the offense with which appellant was charged. I do not believe that this requirement made by the circuit court mandated jail or forfeiture of a bail bondsman's fee. One as reliable as appellant is represented to

[1]The charge of a professional bail bondsman is regulated by the trial court, Ark. Stat. Ann. § 43-732 (Repl. 1964), and ordinarily amounts to 10% of the face amount of the bond.

be would likely be able to make a "property bond" without risking the fee.