SLIP OPINION

Cite as 2016 Ark. 49

# SUPREME COURT OF ARKANSAS

No. CR-15-638

| | | |
|---|---|---|
| RAMON B. TRUJILLO | | **Opinion Delivered** February 11, 2016 |
| | APPELLANT | |
| V. | | APPEAL FROM THE BENTON COUNTY CIRCUIT COURT [NO. CR2015-0840-1] |
| | | HONORABLE ROBIN F. GREEN, JUDGE |
| STATE OF ARKANSAS | | |
| | APPELLEE | PETITION FOR WRIT OF CERTIORARI DENIED. |

**KAREN R. BAKER, Associate Justice**

On June 1, 2015, appellant, Ramon Ballesteros Trujillo, was arrested in Benton County, Arkansas, and ultimately charged with two counts of aggravated assault, one count of second-degree domestic battery, one count of third-degree domestic battery, and enhanced penalty for an offense committed in the presence of children. The affidavit of probable cause for Trujillo's arrest provided that on May 31 and June 1, 2015, Trujillo physically abused his thirty-five-week pregnant girlfriend, Lesly Velazquez and her one-year-old son, and stated that Trujillo punched and hit both Velazquez and her son, attempted to smother her son, bound Velazquez with cable cords, and dunked her under water in a bathtub. On June 3, 2015, Trujillo appeared in district court and the district court entered a "no contact" order and set bail at $25,000 cash or surety. On that same day, Trujillo posted bond and was released. On June 12, 2015, the State filed a motion to revoke Trujillo's

SLIP OPINION

release status and increase Trujillo's bail, alleging that Trujillo had violated the "no contact" order. Also, on June 12, 2015, the circuit court issued a bench warrant. On July 15 and 23, 2015, the circuit court conducted bail hearings and on July 23, 2015, set Trujillo's bail at "$300,000 cash." Trujillo objected and asserted that Arkansas does not allow cash-only bail and that Trujillo's bail was excessive.

On August 12, 2015, Trujillo filed his petition for writ of certiorari and on August 19, 2015, the State responded. On September 10, 2015, we took the petition as a case and set a briefing schedule. The parties timely filed their briefs and Trujillo presents two points in support of his request that this court issue a writ of certiorari for review: (1) the circuit court erred in setting a cash-only bail and (2) the circuit court erred in ordering $300,000 cash-only bail because $300,000 is excessive.

*Standard of Review*

The remedy of the writ of certiorari is appropriate to review bail-bond proceedings. *Foreman v. State*, 317 Ark. 146, 875 S.W.2d 853 (1994) (per curiam); *Duncan v. State*, 308 Ark. 205, 823 S.W.2d 886 (1992); *Thomas v. State*, 260 Ark. 512, 542 S.W.2d 284 (1976). The scope and nature of the writ of certiorari has been defined as follows: Certiorari lies to correct proceedings erroneous on the face of the record where there is no other adequate remedy, and it is available to the appellate court in its exercise of superintending control over a lower court that is proceeding illegally where no other mode of review has been provided. *Lupo v. Lineberger*, 313 Ark. 315, 855 S.W.2d 293 (1993). A demonstration of a plain, manifest, clear, and gross abuse of discretion is essential before this court will grant a petition

2

for writ of certiorari. *Shorey v. Thompson*, 295 Ark. 664, 750 S.W.2d 955 (1988).

Finally, with regard to our interpretation of the constitution, this court reviews the circuit court's interpretation of the constitution de novo, and though this court is not bound by the circuit court's decision, the circuit court's interpretation will be accepted as correct on appeal in the absence of a showing that the circuit court erred. *Shipp v. Franklin*, 370 Ark. 262, 264, 258 S.W.3d 744, 747 (2007).

*Law and Analysis*

Prior to reaching the merits of the issues presented, we must first determine whether the issues presented are ripe for review. The State contends that Trujillo's arguments regarding pretrial bail lack merit and may also be moot because the record demonstrates that a trial date had been set prior to this court reaching the merits of Trujillo's arguments. In his reply brief, Trujillo responds that on November 30, 2015, Trujillo pled guilty to aggravated assault, second-degree domestic battery, and third-degree domestic battery and is in the custody of the Arkansas Department of Correction. However, Trujillo urges us to address the issues presented because his petition falls within an exception to the mootness doctrine as an issue of substantial public interest. Accordingly, we must determine whether Trujillo's case is moot.

In *Cotten v. Fooks*, 346 Ark. 130, 133–34, 55 S.W.3d 290, 292 (2001), we explained,

[a]s a general rule, the appellate courts of this state will not review issues that are moot. *See Forrest Constr., Inc. v. Milam*, 345 Ark. 1, 43 S.W.3d 140 (2001); *Dillon v. Twin City Bank*, 325 Ark. 309, 924 S.W.2d 802 (1996). To do so would be to render advisory opinions, which this court will not do. *McCuen v. McGee*, 315 Ark. 561, 868 S.W.2d 503 (1994). We have generally held that a case becomes moot when any judgment rendered would have no practical legal effect upon a then–existing legal

controversy. *See Forrest Constr., Inc. v. Milam*, *supra*; *Quinn v. Webb Wheel Products*, 334 Ark. 573, 976 S.W.2d 386 (1998); *Dillon v. Twin City Bank*, *supra*.

This court has recognized two exceptions to the mootness doctrine, one of which involves issues that are capable of repetition, yet evade review. *See, e.g.*, *Quinn v. Webb Wheel Products, supra*; *Robinson v. Arkansas State Game & Fish Comm'n*, 263 Ark. 462, 565 S.W.2d 433 (1978) (authority of courts to enter temporary orders despite expiration of the particular orders being litigated); *Cummings v. Washington County Election Comm'n*, 291 Ark. 354, 724 S.W.2d 486 (1987) (addressing question of candidate's eligibility to run for office despite completion of election cycle).The other mootness exception concerns issues that raise considerations of substantial public interest which, if addressed, would prevent future litigation. This exception arose early in our caselaw and continues today. *See, e.g.*, *Forrest Constr., Inc. v. Milam*, *supra* (holding that an issue is a matter of substantial public importance where it involves the use of property in a large subdivision and involves the rights of a large number of people); *Duhon v. Gravett*, 302 Ark. 358, 790 S.W.2d 155 (1990) (holding that the question of the constitutionality of Arkansas's judgment enforcement statutes was a substantial question that merited review despite mootness of actual controversy); *Owens v. Taylor*, 299 Ark. 373, 772 S.W.2d 596 (1989) (holding a substantial issue remained, despite mootness, as to whether conditions could be imposed on a defendant's release from State Hospital when he was scheduled to stand trial); *Cain v. Carl-Lee*, 171 Ark. 155, 283 S.W. 365 (1926)(following the rule in *Wilson*); *Wilson v. Thompson*, 56 Ark. 110, 19 S.W. 321 (1892) (addressing issues despite mootness because "the cause was of practical importance").

*Cotten*, 346 Ark. at 133–34, 55 S.W.3d at 292.

Here, Trujillo has presented two issues.  Trujillo's first issue is whether "cash only" bail is prohibited under our state law.  Because the imposition of "cash only" bail affects all criminal defendants seeking pretrial release, the public, our judiciary and members of the bar, it falls within the purview of the exception to the mootness doctrine as an issue of substantial public interest.  However, with regard to Trujillo's argument regarding excessive bail, the issue presented is specific to Trujillo.  Further, because Trujillo entered a guilty plea, the issue has become moot and will not be addressed.

*Cash-Only Bail*

Turning to the remaining merits of Trujillo's petition, the issue is whether the circuit court erred in setting a "cash only" bail. Trujillo asserts that a "cash only" bail violates the Arkansas Constitution, article 2, section 8.

At the bail hearing, over Trujillo's objection, the circuit court ruled that the bail was cash-only. At issue is article 2, section 8, of the Arkansas Constitution, which states in pertinent part:

> All persons shall, before conviction, be bailable by *sufficient sureties*, except for capital offenses, when the proof is evident or the presumption great.

*Id*. (emphasis added).

Rule 9.2 of the Arkansas Rules of Criminal Procedure, "Release on Money Bail," provides in pertinent part as follows:

> (a) The judicial officer shall set money bail only after he determines that no other conditions will reasonably ensure the appearance of the defendant in court.
>
> (b) If it is determined that money bail should be set, the judicial officer shall require one (1) of the following:
>
> . . . .
>
> > (iii) the execution of a bond secured by the deposit of the full amount in cash, or by other property, or by obligation of qualified sureties.

Trujillo contends that cash–only bail violates "sufficient sureties" as required by art. 2, section 8 of our constitution. The State responds that the obvious and common meaning of "sufficient" and "surety" includes cash, and the meanings of these words do not indicate that cash cannot serve as the surety.

We review questions of constitutional construction de novo. *See Wilson v. Weiss*, 370 Ark. 205, 258 S.W.3d 351 (2007). When interpreting the constitution, our task is to read the laws as they are written and interpret them in accordance with established principles of constitutional construction. *Brewer v. Fergus*, 348 Ark. 577, 79 S.W.3d 831 (2002). Language of a constitutional provision that is plain and unambiguous must be given its obvious and common meaning. *Proctor v. Daniels*, 2010 Ark. 206, 392 S.W.3d 360. Neither rules of construction nor rules of interpretation may be used to defeat the clear and certain meaning of a constitutional provision. *Id.* Further, the Arkansas Constitution must be considered as a whole, and every provision must be read in light of other provisions relating to the same subject matter. *Forrester v. Daniels*, 2010 Ark. 397, 373 S.W.3d 871.

With these standards in mind, we turn to the language at issue, which states in pertinent part: "All persons shall, before conviction, be bailable by sufficient sureties." As the parties indicate, this issue presented, whether "cash only" bail violates our constitution, is an issue of first impression. Trujillo asserts that there is a split of authority among other states and relies on *State v. Barton*, 331 P.3d 50, 59 (Wash. 2014) for his position that "cash only" violates our constitution. In *Barton*, the Washington Supreme Court reasoned that the purpose behind bail was to protect the accused, and held that

> [a]rticle I, section 20 of the Washington State Constitution guarantees those accused of bailable offenses the right to access bail by sufficient sureties. Consistent with both its historical and ordinary meaning, we hold that surety contemplates a third–party arrangement, as distinguished from the accused depositing cash or property directly with the court. Barton was ordered to secure his bail with a 10 percent deposit in the amount of the bond "in cash or other security." We hold that this order, insofar as it disallowed use of a surety, violates the constitutional mandate of article I, section 20.

6

SLIP OPINION

However, in *Saunders v. Hornecker*, 344 P.3d 771, 780–81 (Wyo. 2015), the Wyoming

Supreme Court held that "cash only" was constitutionally permissible and explained

> This Court has stated that the purpose of bail in Wyoming is to ensure the defendant's presence to answer the charges without excessively restricting the defendant's liberty pending trial. *Miller v. State*, 560 P.2d 739, 742 (Wyo.1977) (citing *U.S. v. Wright*, 483 F.2d 1068, 1069 (4th Cir.1973)); *Vigil*, 563 P.2d at 1347 ("It has long been settled that the sole function of bail is to exact assurance from the accused that he will stand trial and submit to sentence if found guilty." (*quoting Stack v. Boyle*, 342 U.S. 1, 4, 72 S. Ct. 1, 3, 96 L.Ed. 3 (1951)). This is consistent with the purpose of bail enunciated by the U.S. Supreme Court. *Carlson v. Landon*, 342 U.S. 524, 567 n.14, 72 S.Ct. 525, 547 n.14, 96 L.Ed. 547 (1952); *Stack*, 342 U.S. at 4, 72 S. Ct. at 3.

The Wyoming court ultimately held that the purpose of bail is to secure the

appearance of the defendant and held that cash-only bail was constitutional.

In Arkansas, like Wyoming, we have held that the purpose of bail is to ensure the

presence of the defendant.

> The purpose of bail is to ensure the accused's presence at trial. Therefore, bail set at a figure higher than an amount reasonably calculated to fulfill this purpose is excessive under the Eighth Amendment of the United States Constitution and under Article 2, § 8 and § 9 of the Arkansas Constitution. *Stack v. Boyle*, 342 U.S. 1 (1951). In considering the purpose for which bail is set, we emphasized in *Thomas*, *supra*, that "Money bail in any form ought to be a last resort and should be used only to assure the defendant's appearance."

*Grey v. State*, 276 Ark. 331, 333, 634 S.W.2d 392, 394 (1982).

With this background, we move to the meaning of the term "sufficient sureties,"

*Black's Law Dictionary* defines "sufficient" as "Adequate; of such quality, number, force, or

value as is necessary for a given purpose." "Surety" as: "A formal assurance; esp., a pledge,

bond, guarantee, or security given for the fulfillment of an undertaking." *Black's Law

Dictionary*, 1661, 1670 (10th ed. 2014).

Here, applying the obvious and common meaning to the language in the constitution, "sufficient sureties" is an adequate, formal assurance or guarantee for the stated purpose. In other words, an adequate guarantee to ensure the accused's presence at trial. Further, we find the analysis of the Wyoming Supreme Court's analysis in *Saunders* persuasive and adopt that same reasoning here. The purpose of bail in Arkansas is to ensure the presence of the defendant, and cash only does not restrict a defendant's constitutional rights pending trial. Accordingly, based on the plain language of the constitution and our stated purpose for bail, we hold that the term "sufficient sureties" refers to a broad range of methods to accomplish "sufficient sureties," including cash. Accordingly, our constitution permits cash-only bail, as determined by the circuit court pursuant to Rule 9.2, and is subject to the constitutional protections of article 8, section 2 of our constitution. Based on the record before us, we find no error and hold that the writ does not lie.

*Excessive Bail*

As discussed above, Trujillo also asserts that the circuit court erred in setting excessive pretrial bail at $300,000. Having determined that this issue is moot, we do not reach this issue.

Petition for writ of certiorari denied.

BRILL, C.J., and HART, J., dissent.

**HOWARD W. BRILL, Chief Justice, dissenting.**

Well, they emptied out my pockets, took my pills and guitar picks.
I said: "Wait, my name is. . . :" "Awe shut up." Well, I sure was in a fix.

The sergeant put me in a cell, then he went home for the night;
I said: "Come back here, you so and so; I ain't bein' treated right."

Well, they're bound to get you, cause they got a curfew,
And you go to the Starkville City Jail.

I started pacin' back and forth, and now and then I'd yell,
And kick my forty dollar shoes against the steel floor of my cell.
I'd walk awhile and kick awhile, and all night nobody came.

Then I sadly remembered that they didn't even take my name.
At 8 a.m. they let me out. I said: "Gimme them things of mine!"
They gave me a sneer and a guitar pick, and a yellow dandelion.

They're bound to get you, 'cause they got a curfew,
And you go to the Starkville City Jail.

After being arrested for trespassing and picking flowers, Johnny Cash[1] spent the night in the Starkville City Jail. His ballad suggests that he was not taken before a magistrate or given the opportunity to be released on bail.

As presented in this matter, the issue is whether an Arkansas judge, after concluding that a prisoner is eligible to be released on bail, may inform him that the only acceptable form of bail is cash. I agree with the majority that while the appropriateness of the bail in this matter is moot, the exceptions to the mootness doctrine permit us to hear the underlying issue. I also agree that cash is a sufficient surety for bail. Finally, I agree that no Arkansas law answers the question of whether cash–only bail is permitted by the Arkansas Constitution. But

---

[1] Johnny Cash was born in Kingsland (Cleveland County) in 1932 and raised in Dyess (Mississippi County). When he died in 2003, the words and music of the Man in Black were known around the world. The Arkansas House of Representatives calls on all Arkansans to remember February 26 of each year as "Johnny Cash Day." House Concurrent Resolution 1003 of 1969: "[H]e is truly representative of the spirit and ideals which have made our state great. . . ."

I see no reason to look to the opinions of Washington, Wyoming, or any other sister state.[2] Because I disagree with the majority's analysis and conclusion that cash-only is permitted, I respectfully dissent.

The issue before us is whether a judicial order requiring cash -only for bail violates the language in article 2, section 8 of the Arkansas Constitution, which provides, "All persons shall, before conviction, be bailable by sufficient sureties." This declaration of an individual right appears almost verbatim in each of the four previous constitutions of the state of Arkansas, with the word "securities" used in the first three. *See* Ark. Const. of 1836, Art, 2, section 16 (1838) ("[A]ll prisoners shall be bailable by sufficient securities."); Ark. Const. of 1861, art. 2, section 16 ("[A]ll free white prisoners, Indians included, shall be bailable by sufficient securities"); Ark. Const. of 1864, art. 2, section 16 ("[A]ll prisoners shall be bailable by sufficient securities."). Article 2, section 9 of the 1868 constitution contains the precise language we have today in our current 1874 constitution: "All persons shall, before conviction, be bailable by sufficient sureties." Ark. Const. of 1874 art. 2, section 8.

We construe this constitutional language, employing familiar rules of construction. "The fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent of the framers and of the people who adopted it. The court should therefore constantly keep in mind the object sought to be accomplished by its adoption."

---

[2] Arkansas Attorney General Opinion No. 99-158 relied on an Ohio decision in concluding that, under certain circumstances, an Arkansas judge can deny a commercial surety bond and impose a "cash only" requirement.

SLIP OPINION

*Martin v. Kohls*, 2014 Ark. 427, at 15, 444 S.W.3d 844, 852 (quoting *Bailey v. Abington*, 201 Ark. 1072, 1078, 148 S.W.2d 176, 180 (1941)). Furthermore,

> [i]n interpreting the language of a provision of the Arkansas Constitution, we have said that we endeavor to effectuate as nearly as possible the intent of the people in passing the measure. We have also adopted the rule of construction in connection with interpreting provisions of our State Constitution that we give language its plain and ordinary meaning.

*Allred v. McLoud*, 343 Ark. 35, 41, 31 S.W.3d 836, 839 (2000).

Applying these principles of constitutional interpretation to the provision at hand, we attempt to ascertain the intent of the framers in providing, and the intent of the people in adopting, the guarantee that prisoners shall "be bailable by sufficient sureties." Thus, we look to the words at the time this language was drafted. "Bailable" meant "entitled to be discharged on bail," and "bail" was defined as "delivery of a person arrested, out of the custody of the law, into the safe keeping or friendly custody of persons who become sureties for his return of appearance." *Burrill's Law Dictionary* (2d ed. 1859). A "surety" was "[o]ne who engages to be answerable for the debt, default, or miscarriage of another; one who undertakes to do some act in the event of the failure of another to do it, and as security for its being done." *Id.* Taking these definitions together, "bailable by sufficient sureties" meant that in a case where bail was available, the prisoner was entitled to be released into the custody of a person, a "surety," who was answerable for any subsequent failure of the prisoner to appear. The prisoner had a right to engage a willing person to serve as surety, and release upon such engagement by a sufficient surety.

11

This right was provided in almost every state constitution adopted after 1776. June Carbone, *Through the Emperor's New Clothes: Rediscovery of Basic Principles in the Administration of Bail*, 34 Syracuse L. Rev. 517, 532 (1983). As of 1845, seventy-five percent of the states had a similar "right to bail" clause in their constitutions. Matthew J. Hegreness, *America's Fundamental and Vanishing Right to Bail*, 55 Ariz. L. Rev 909, 927 (2013). During this time, if in a particular case bail was permitted, then the court had no right to refuse bail on account of the surety offered, if it was "pecuniarily sufficient." Joel Prentiss Bishop, *Criminal Procedure; or, Commentaries on the Law of Pleading and Evidence and the Practice in Criminal Cases* 157 (Little, Brown, and Company, 3d ed. 1880) ("If, in these cases, sureties pecuniarily sufficient present themselves, the magistrate has no right to reject them out of dislike to their politics or personal character.") (citing *Regina v. Badger*, 4 Q.B. 468 (1843); *see also* Franklin Fiske Heard, *Heard on the Criminal Law* 246–47 (Little, Brown, and Company 1882) ("[T]he duty of magistrates in taking bail was strictly confined to ascertaining the solvency of the bail . . . all the magistrates have to do is to be satisfied that the persons proposed as bail are possessed of sufficient property. . . .").

The plain language of article 2, section 8, as well as contemporaneous legal principles regarding bail, reveal the object sought to be accomplished by the framers and the citizens. If a prisoner could procure a surety with sufficient property, then he was entitled to be released prior to trial. Though our methods of bail have evolved somewhat since 1874, the same purpose must be given effect today. If a prisoner can procure a sufficient surety that satisfies the amount set for bail, then he is entitled to be released.

Cash-only bail may have definite advantages: for example, the court may believe that the defendant is unlikely to appear or to flee the jurisdiction; a cash bond may be a stronger incentive for a defendant to appear for the hearing. On the other hand, cash–only bail has drawbacks.  It may have an unfair, even disparate impact, upon lower-income defendants without resources. Cash-only bail, particularly in larger amounts, may be used punitively.

But my dissent is not based on practice or policy. It is based on the language of the Arkansas Constitution. Any possible advantages must give way to the constitutional intent that has been a declared right guaranteed in Arkansas since 1836. Requiring cash-only for bail strips a person of his constitutional right to provide any sufficient surety for his release. Accordingly, I would hold that imposing a cash-only bail requirement violates article 2, section 8 of the Arkansas Constitution. [3]

**JOSEPHINE LINKER HART, Justice, dissenting.**  The circuit court's decision to set a cash-only bail of $300,000 is in contravention of the Arkansas Constitution. Further, our rules of criminal procedure do not permit it. In defying the Arkansas Constitution, the majority takes from the people the fundamental, absolute right to reasonable bail before conviction. In its place, and by affirming the imposition of cash-only bails, the majority creates and grants to the government an absolute right to incarcerate until the time of trial an accused who is not affluent. This decision will disproportionally impact the poor, as well as those whose wealth is invested and do not have readily at their disposal large sums of cash.

---

[3]Rule 9.2 of the Arkansas Rules of Criminal Procedure provides that in those instances when bail is appropriate, cash bail is permitted. But the language does not authorize cash-only bail.

SLIP OPINION

Thus, I respectfully dissent.

In its opinion, the majority expounds on what were only allegations when the circuit court made its decision to impose a cash-only bail. In doing so, the majority attempts to bias the reader by suggesting that the defendant was deserving of a cash-only bail. The resulting irony is that these allegations are irrelevant to the question that the majority answers. They have decided to answer—incorrectly—a question unattached to these allegations—whether cash-only bail is constitutional—and declare the question on which these allegations may have been relevant as moot.

The Arkansas Constitution affirms that the people have a constitutional right to bail for noncapital offenses, stating that "[a]ll persons shall, before conviction, be bailable by sufficient sureties." Ark. Const. art. II, § 8. Further, the Arkansas Constitution specifically recognizes a right against excessive bail. Ark. Const. art. 2, § 9 (stating that "[e]xcessive bail shall not be required"). Thus, the Arkansas Constitution affirms that, other than in capital cases, the people have an absolute right to a reasonable bail before conviction. *Reeves v. State*, 261 Ark. 384, 387, 548 S.W.2d 822, 824 (1977).

In keeping with these constitutional dictates, this court promulgated Rule 9.2 of the Arkansas Rules of Criminal Procedure, which sets out our rules regarding bail. In essence, promulgation of Rule 9.2 was this court's implicit expression of the requirements of art. II, section 8 of the Arkansas Constitution. *See Miller v. State*, 262 Ark. 223, 226, 555 S.W.2d 563, 564 (1977) (noting that the Arkansas Rules of Criminal Procedure implicitly rejected an argument that the court had no inherent rule-making authority absent an enabling

statute). Further, this court's comments to Rule 9.2 fortify its connection to the Arkansas Constitution, as we stated, "Money bail in any form ought to be a last resort and should be used only to assure the defendant's appearance. It is believed that damage to the integrity of the legal process will best be avoided by limiting bail to its lawful function."

According to Rule 9.2(b), if a judicial officer determines that money bail should be set, one of the following could be selected: (i) the "execution of an unsecured bond in an amount specified by the judicial officer, either signed by other persons or not"; (ii) the "execution of an unsecured bond in an amount specified by the judicial officer, accompanied by a deposit of cash or securities equal to ten per cent (10%) of the face amount of the bond"; or (iii) the "execution of a bond secured by the deposit of the full amount in cash, or by other property, or by obligation of qualified sureties."

Only the third option speaks in terms of a "bond secured by the deposit of the full amount in cash." Yet, even there, the defendant has two other alternatives: the execution of a bond secured by the deposit of other property or the execution of a bond secured by obligation of qualified sureties. These three alternatives under Rule 9.2(b)(iii) for the execution of a bond are for the benefit of the defendant. It cannot seriously be suggested that a judicial officer could reject a deposit of cash and instead demand the deposit of the defendant's real property, or vice versa.

Treating these alternatives as choices to be made by the defendant is in keeping with our case law. A judicial officer must use the least restrictive type of money-bail arrangement

SLIP OPINION

set out in Rule 9.2(b) for securing the appearance of an arrested person. *Thomas v. State*, 260 Ark. 512, 522, 542 S.W.2d 284, 290 (1976). By decreeing that only a cash-only bail would suffice, without considering the possibility of imposing the two other alternatives in Rule 9.2(b)(iii), the circuit court effectively circumvented the requirement of the least restrictive bail. *See Foreman v. State*, 317 Ark. 146, 875 S.W.2d 853 (1994) (granting a petition for writ of certiorari and remanding to the circuit court where it set bond in the amount of $1,000,000 "cash only" and failed to consider factors relevant to the risk of willful nonappearance ).

The circuit court's decision to require a cash-only bail does not comport with Rule 9.2. Thus, I cannot see how the circuit court's decision to forgo our mandated rules regarding bail, and instead create out of nothing a requirement for cash-only bail, can possibly comport with the constitutional requirement of bail by "sufficient sureties."

I respectfully dissent.

*Norwood & Norwood, P.A.*, by: *Doug Norwood* and *Alison Lee*, for appellant.

*Leslie Rutledge*, Att'y Gen., by: *Vada Berger*, Ass't Att'y Gen., for appellee.